IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID J. BESING, Individually and
Derivatively on Behalf of
ENVIRONMENTAL
ADAPTATIONS, INC.,

           Plaintiffs,

      vs.                            No. CIV 95-1193 MV/KBM

JERRY FRANCE, MARVIN
CREAMER, MARGARET LEE,
LYNCO DISTRIBUTING, INC.,
GENE HEATLY, BOZARTH &
VICKERS, P.C., ELLIS VICKERS,

           Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Bozarth & Vickers' and Ellis

Vickers' Motion for Summary Judgment, filed June 22, 1998 **[Doc. 153]**. The Court, having

considered the motion, response, reply, supplemental authority, relevant law, and being otherwise

fully informed, finds that the motion is partially well taken and will be **GRANTED, in part.**

### PROCEDURAL BACKGROUND

Plaintiff David Besing, acting *pro se,* filed his original Complaint in October of 1995.

Plaintiff amended his Complaint twice before he obtained counsel.  Plaintiff then filed a Third

Amended Complaint, and Magistrate Judge Puglisi denied Defendants Bozarth & Vickers' and

Ellis Vickers' Motion to Dismiss by Memorandum Opinion and Order filed September 26, 1997.

Count I of the Third Amended Complaint alleges a RICO claim based on predicate acts of mail

and securities fraud. Count II alleges securities fraud. Counts III, IV and V allege state law

claims for breach of fiduciary duty, fraud and negligence. Besing brings these claims individually

and derivatively on behalf of Environmental Adaptations, Inc. ("EAI").

Discovery closed on April 7, 1998. Defendants Bozarth & Vickers and Ellis Vickers

subsequently filed his motion for summary judgment on all counts.

## FACTUAL BACKGROUND

The undisputed facts of this case[1] reveal that Plaintiff David J. Besing invented a

biodegradable seed delivery product called the Grass Waffle. Besing filed a patent application

with the United States Patent Office in June 1992, and was granted a patent for his invention on

January 4, 1994.

In 1992, Besing went into business with Defendants Jerry France and Marvin Creamer to

manufacture and sell the Grass Waffle. Besing, France and Creamer sought the aid of Gene

Simmons at the Small Business Development Center at Eastern New Mexico University, Roswell.

Simmons recommended Defendant Ellis Vickers as a Roswell attorney who had helped other

small businesses.[2]

Vickers did not know Besing, Creamer or France prior to the time when they approached

him to incorporate their company. Vickers drafted corporate documents, including Articles of

---

[1]     The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

[2]     Because the allegations against Vickers' firm, Bozarth & Vickers, are predicated entirely on the actions of and allegations against Vickers, the Court will refer to both Defendants as "Vickers."

Incorporation, By-Laws and Shareholders' Agreement for the new Texas company, called EAI. The company was incorporated on April 28, 1993.

After the first shareholders' meeting, Besing served as President of EAI, Creamer served as Vice-President of Sales & Marketing and Treasurer, and France served as Vice-President of Manufacturing & Production and Secretary. Vickers drafted an Exclusive Licensing Agreement, executed by Besing and EAI in May of 1993, by which Besing assigned certain unspecified rights in his patent to EAI.

Besing resigned as President in early January 1994. Besing remains a shareholder, although there is no evidence in the record to inform the Court on whether Besing has the right to vote on corporate decisions. The only evidence in the record related to this issue is Vickers' statement in his Affidavit that unanimity between Besing, Creamer and France was not required by the applicable corporate statutes or the governing document of EAI.

There is no evidence in the record that the Grass Waffle was ever manufactured or available for sale. EAI filed a form with the Texas Employment Office indicating that EAI's business in Texas was suspended or discontinued entirely as of September 26, 1994. In addition, Besing notified EAI that he terminated the amended Exclusive Licensing Agreement on October 3, 1994.

A.     Predicate Act Number 1 - Drafting the EDRA

In December 1993, at the request of Creamer, Vickers began drafting an Exclusive Distribution Rights Agreement ("EDRA"). The EDRA gave the other party, originally called LDI, later revised to Lynco Distributing, Inc. ("Lynco"), the exclusive right to buy all of the Grass Waffles manufactured by EAI and the exclusive right to sell these Grass Waffles within a four

hundred mile radius of Vernon, Texas.

The draft prepared by Vickers had signature lines for Creamer on behalf of EAI and for George Carr on behalf of Lynco. Sometime after Vickers sent the final draft to Besing, Creamer changed the signatory for Lynco to Margaret Lee, who is Creamer's common law wife. Vickers did not know about the relationship between Lee and Creamer until Besing told him about it.

Although Besing claims that he did not find out about the EDRA until after it had been executed by Creamer and Lee (Plaintiffs' Disputed Materal Facts No. 2), he testified during his deposition that he learned that Vickers was drafting a document called the EDRA in December 1993 when he reviewed Vickers' bills. (Appendix to Defendants' Ellis Vickers and Bozarth & Vickers Memorandum in Support of Motion for Summary Judgment (hereinafter "Defendants' Appendix"), Exhibit A, Besing Dep. at 169.) When Besing learned that Lee had incorporated Lynco, he advised Creamer not to sign the EDRA. Creamer did not follow Besing's advice.

Besing claims that Vickers' conduct in drafting the EDRA violates the federal mail fraud statute, 18 U.S.C. § 1341[3]

### B. Second Predicate Act - Mail Fraud Involving Patent Opinion.

At some point in 1994, Vickers gave the EAI directors the name of a patent attorney at their request. The directors then asked Vickers to speak to that attorney, Ralph Dowell, to pass on their request for "a second opinion on [Besing's] patent." (Appendix to Plaintiffs Response to

---

[3]     While Besing's Complaint also includes claims of wire fraud under 18 U.S.C. § 1346, which relates to wire fraud depriving a party of the intangible right of honest services, Besing's Memorandum in Response to Vickers Defendants Motion for Summary Judgment only addresses wire fraud under § 1341. (*See* Memorandum at 18.) By failing to press this § 1346 claim and failing to present any competent evidence in support of it in response to the motion for summary judgment, Plaintiff has failed to carry his burden in opposing summary judgment on these grounds. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Defendant Vickers Motion for Summary Judgment and Defendant Heatly's Motion for Summary Judgment (hereinafter "Plaintiff's Appendix"), Exhibit 3, Vickers Dep. at 135.) Vickers testified that "he got the impression from the directors that they wanted to find out for sure if the patent that was the subject of the license agreement was, in fact, a good, strong, valid patent." (*Id.* at 137.) While Besing claims that Vickers considered Dowell's services to be a personal matter of directors Heatly and France, (Plaintiff's Statement of Material Facts in Dispute ¶ 10), this claim is directly contradicted by the testimony cited by Besing in which Vickers testified that he "[c]ouldn't represent any individual shareholder in any of these disputes." (Plaintiff's Appendix, Exhibit 3, Vickers Dep. at 140.)

Plaintiff points to testimony that two defendants other than Vickers hired Dowell to prepare and file a new patent application in EAI's name that would be an improvement on Plaintiff's patent and therefore would supercede or be superior to Plaintiff's patent. (Plaintiff's Statement of Material Facts in Dispute ¶ 10.) However, there is no evidence that Vickers knew of these activities or had any involvement in them. Nor is there is no evidence that this patent application was ever filed or that any patent issued.

Besing claims that Vickers' conduct regarding the patent attorney violates the federal mail fraud statute, 18 U.S.C. § 1341.

### C. Predicate Act Number 3 - Stock Sales.

At the request of Besing, Creamer and France, Vickers prepared their stock certificates as well as the certificates for all new shareholders. When he received a signed subscription agreement from EAI, Vickers had the stock certificates filled out to conform with the information received on the subscription agreement and forwarded them to the appropriate EAI officer for

signature and delivery to the shareholder.  Vickers did not sell EAI stock.  Besing claims that

Vickers knew that stock was being sold interstate, which Besing claims takes a company's stock

sales outside of an exemption from federal securities laws.  (Plaintiff's Statement of Material Facts

in Dispute ¶¶ 18, 21.)  The evidence supporting this claim is an unauthenticated stock transfer

ledger showing addresses outside of Texas and an unauthenticated letter signed by Gene Heatly,

another defendant, addressed to an out-of-state stockholder and copied to Vickers.

Besing claims further that Vickers knew that Creamer and others selling stock for EAI

were paying commissions, which he alleges violates state and federal laws limiting commissions to

sales by licensed broker-dealers.  (*Id.* ¶ 23.)  While Plaintiff has submitted evidence that Creamer

paid a commission for the sale of stock, (*id.*), he has not presented any evidence that Vickers

knew about this commission payment or any other commission payment to people selling EAI

stock.

In addition, in Plaintiff's Memorandum, Besing claims that Creamer and others were

selling EAI stock using a prospectus or business plan that contained material omissions.

(Plaintiff's Memorandum at 16-17.)  While Besing further claims that Vickers was familiar with

the contents of the prospectus, (*id.* at 17), there is no evidence in the record supporting this claim.

Besing claims that Vickers' conduct in aiding and abetting EAI's stock sales and in failing

to disclose the omissions in the prospectus violates the federal mail fraud statute, 18 U.S.C. §

1341, as well as the securities fraud statute, Section 10(b) of the Securities Exchange Act of

1934, 15 U.S.C. § 78j(b) and Securities and Exchange Commission  Rule 10b-5, 17 CFR §

240.10b-5 (hereinafter referred to collectively as "Section 10(b)").

There is no evidence in the record of any damages suffered by the corporation as a result

6

of Besing's claims. The only evidence of damages to Besing relates to damages for lost sales of his patent, and payment of patent fees, attorney's fees and royalties allegedly owed him by EAI. (Plaintiff's Statement of Material Facts in Dispute ¶ 24.)

Vickers has moved for summary judgment claiming that Besing is not a proper derivative plaintiff, that he lacks standing to maintain the securities fraud claims alleged, that Vickers did not commit any RICO predicate acts, that Plaintiff's RICO claims cannot be maintained as a matter of law, and that Plaintiff's common law claims otherwise lack federal jurisdiction. Because the Court finds that Plaintiff lacks RICO standing and that Plaintiff has failed to present disputed material facts concerning whether Vickers committed any predicate acts, the Court will not address Vickers' remaining contentions concerning these claims.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the

motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United*

*States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by

demonstrating to the district court that there is an absence of evidence to support the nonmoving

party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to

judgment as a matter of law, "because the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof."

*Id.* at 322.

**ANALYSIS**

**I.    BESING AND EAI LACK RICO STANDING**.

RICO provides a private right of action under 18 U.S.C. § 1964(c) for violations of the

statute.  Under RICO,

> [a]ny person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue therefor in any
> appropriate United States district court and shall recover threefold
> the damages he sustains and the cost of the suit, including a
> reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).

In other words, in order for a plaintiff to recover damages under the RICO statute, the

plaintiff must show a violation of Section 1962(a), (b), (c) or (d), as well as an injury to business

8

or property by reason of this violation.  This latter "by reason of" requirement is one of causation, and is commonly referred to as RICO standing.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("plaintiff only has standing [under § 1964(c)] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation").

Pursuant to the requirement of RICO standing, merely committing the predicate offenses does not violate the RICO statute.  The plaintiff must show that commission of the predicate acts caused him injury in his business or property.  *Holmes v. SIPC*, 503 U.S. 258, 279 (1992).  Only where proximate cause exists does a plaintiff have standing to raise a RICO claim.  *Id.*  Here, Besing does not have standing to assert his RICO claim because he has not and cannot show that the predicate acts caused injuries to him or to EAI.

A.      **The EDRA.**

Beginning with the EDRA, Besing presents no evidence that EAI was harmed by entering into an agreement by which Lynco would buy all of the product produced and would have exclusive distribution rights within a certain geographic area.  Besing alleges in his answers to interrogatories that the EDRA damaged EAI by "allowing Mr. Creamer to siphon-off potential investors in EAI, who instead bought LYNCO distributorships from Creamer and Ms. Lee." (Plaintiff's Appendix, Exhibit 28, No. 23.)  However, there is no evidence in the record supporting this claim or any other claim that the EDRA harmed EAI.

Nor has Besing shown that he suffered any damages proximately caused by the corporation's decision to enter into the EDRA.  In fact, the only evidence in the record on this issue shows that Besing benefitted from this decision.  Besing filed suit against several of the Defendants in this action resulting from the decision to enter into the EDRA.  As a result of this

9

suit, Besing reached a settlement that amended his Exclusive Licensing Agreement with EAI.

Pursuant to this settlement, Besing received royalty payments of at least $47,000. Besing lacks

RICO standing to assert a claim for himself or EAI based on this predicate act.

### B.    The Patent Opinion.

Besing also lacks RICO standing to bring a claim based on certain Defendants' decision on

behalf of EAI to seek a patent opinion and on Gene Heatly's and EAI's decision to hire a patent

attorney to prepare and file a new patent application that would be an improvement on Plaintiff's

patent. Besing does not and cannot present any evidence that either of these actions caused him

or EAI any harm. There is no evidence that Defendants ever received the patent opinion they

sought. Nor is there any evidence that the plan to file a new patent application ever went past the

planning stage. Besing, then, cannot assert a RICO claim based on this predicate act.

### C.    Stock Sales.

Plaintiff's claim concerning EAI's stock sales is similarly deficient. Neither Besing nor

EAI were harmed by EAI's interstate stock sales, its payment of commissions for stock sales or

any misstatements or omissions in the prospectus. Besing did not purchase any stock, so he

cannot allege that any illegal practices or misrepresentations involving those sales harmed him.

*See Powers v. British Vita, plc,* 57 F.3d 176, 188 (2d Cir. 1995) (finding plaintiff who neither

bought nor sold securities lacked RICO standing to pursue predicate act of securities fraud);

*Pelletier v. Zweifel*, 921 F.2d 1465, 1510-11 n.80 (11th Cir. 1991) (finding plaintiff failed to

prove the alleged securities fraud damaged him because he did not purchase any of the stock at

issue); *Garbade v. Great Divide Mining and Milling Corp*, 645 F. Supp. 808, 815-16 (D. Colo.

1986) (finding no RICO standing where alleged misrepresentations were made to third parties and

10

not to plaintiff).[4]  And presumably EAI benefitted from these practices, which allowed the

company to sell stock it might not have sold had it not sold stock interstate, not paid commissions

and had it been truthful in its prospectus.  *In re American Express Shareholder Litigation*, 39

F.3d 395, 399-400 (2d Cir. 1994) (finding corporate shareholders lacked RICO standing because

corporation's scheme was intended to benefit rather than harm the corporation).

Neither Besing nor EAI can satisfy the requirements of RICO standing on any of the

predicate acts alleged to involve Vickers.

## II.      VICKERS DID NOT COMMIT ANY PREDICATE ACTS.

Even if Besing or EAI had standing to assert the RICO claim alleged, Besing has failed to

show any disputed issue of material fact on the securities fraud or mail fraud claims.  Besing has

alleged violations of 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and 1962(d).  Each of these

sections of the RICO statute includes the element of a "pattern of racketeering activity."  This

element requires proof of "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).

Violations of mail fraud and securities fraud statutes are included in the definition of racketeering

activity.  18 U.S.C. §§ 1961(1)(B), 1961(1)(D).  These acts of racketeering are "often referred to

as 'predicate acts' because they form the basis for liability under RICO."  *Bacchus Indus., Inc. v.*

---

[4]      This is a separate, although related, issue to Vickers' argument that the
requirement that a plaintiff be a purchaser or seller to bring a securities fraud claim should be
imported into the RICO analysis when securities fraud is a predicate act.  *Powers*, 57 F.3d at 188
(declining to decide whether purchaser/seller requirement applies because plaintiff cannot show
that alleged securities fraud harmed him).  The Court does not reach this issue, which has yet to
be decided in the Tenth Circuit, and on which the Circuits disagree (*compare Pelletier*, 921 F.2d
at 1511 n.80 (requirement does not apply to civil RICO actions based on predicate acts of
securities fraud) with *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir. 1987)
(requirement does apply)), because Besing has failed to prove that there is any disputed material
fact concerning whether Vickers committed securities fraud.  *See* discussion below.

*Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The elements of mail fraud under 18 U.S.C. § 1341 are (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme. *Bacchus*, 939 F.2d at 892. "Actionable fraud in turn consists of (1) the misrepresentation of a fact, (2) known to be untrue by the maker, (3) made with an intent to deceive and to induce the other party to act in reliance thereon to his detriment." *Id.* A claim for mail fraud must establish "knowing participation by the defendant in a scheme to defraud." *U.S. v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997) (quoting *Hofmann v. United States*, 353 F.2d 188, 191 (10th Cir. 1965)); *see also U.S. v. Hagedorn*, 38 F.3d 520, 522 (10th Cir. 1994)(citation omitted) ("In order to establish a violation of § 1341, the government must show that the defendant either had guilty knowledge or that his 'indifference to the truth of statements made to induce others to action amounts to fraudulent intent.'").

To the extent that Besing claims that Vickers aided and abetted the mail fraud violations, Besing must establish that Vickers shared in the intent to commit the offense as well as participated in some manner to assist in its commission. *U.S. v. Smith*, 838 F.2d 436, 441 (10th Cir. 1988).

In order to establish primary liability under Section 10(b), Besing must allege and prove: "(1) that the defendant made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that the defendant made the statement or omission with scienter; and (4) that the plaintiff relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation."

12

*Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). A securities fraud violation requires that the defendant acted "knowingly with intent to deceive or defraud." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992).

To the extent that Besing claims that Vickers aided and abetted the securities fraud violations, and to the extent that such a cause of action can be a predicate act after the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (holding that there is no aiding and abetting claim under Section 10b-5),[5] Besing must establish: "(1) the existence of a primary violation of the securities laws by another; (2) knowledge of the primary violation by alleged aider and abettor; and (3) substantial assistance by the alleged aider and abettor in achieving the primary violation." *Anixter*, 77 F.3d at 1225.

### A. Drafting the EDRA.

Besing alleges that Creamer and his common law wife Margaret Lee came up with a scheme to steal EAI's corporate opportunity by entering into the EDRA. Besing alleges that the EDRA allowed Creamer and Lee to sell shares in Lynco which somehow deprived EAI of the opportunity to sell its own shares.

The misrepresentation alleged by Besing is the fact that the EDRA was an interested director transaction because Lee, and somehow through Lee, Creamer, were involved on both sides. However, it is undisputed that Vickers drafted the EDRA to be signed by George Carr and that this signature line was changed by Creamer after Vickers delivered the final draft. It is also

---

[5]     The Tenth Circuit has yet to consider this issue, and the Court need not reach it since Besing has failed to show the existence of any material fact concerning whether Vickers aided and abetted any securities fraud.

undisputed that Vickers did not know that Lee was Creamer's common law wife until Besing told him after Besing had already seen the modified final version of the document. Besing, then, has failed to present any genuine issue of material fact on the issue of whether Vickers knowingly participated in the scheme, a requirement for finding a mail fraud violation.

Moreover, Besing cannot prove any misrepresentation was made to him or to EAI since Besing knew that Lee was Creamer's common law wife, and he has failed to present any evidence that anyone entitled to vote on whether EAI should sign the EDRA was unaware of Creamer and Lee's relationship. Thus, Besing has failed to present any evidence of a misrepresentation of fact, another required element of mail fraud. *See Zell v. Commissioner of Internal Revenue*, 763 F.2d 1139, 1145 (10th Cir. 1985) (no fraud claim where plaintiff is not deceived).

### B.     The Patent Opinion.

Besing's second predicate act alleges a scheme by which certain Defendants intended to deprive him of his patent by applying for a patent that would supercede his. Besing has not presented any evidence that there was any misrepresentation to anyone concerning the lawful act of applying for a superior patent. Furthermore, Vickers' only involvement in the scheme was to consult a patent attorney at EAI's request to obtain a second opinion on Besing's patent. There is no evidence that Vickers knew of the alleged scheme to obtain a patent superior to Besing's patent, nor that he participated in any such scheme. Besing has failed to make a sufficient showing on these essential elements of mail fraud.

### C.     Stock Sales.

Besing claims that Vickers committed securities fraud in allowing others to sell EAI stock using a misleading prospectus or business plan. However, Besing fails to provide any evidence

14

that Vickers knew of the alleged, unspecified omissions, or had anything to do with the prospectus. In addition, Besing fails to provide any evidence that he or EAI relied on these alleged misrepresentations, another required element of securities fraud, since neither Besing nor EAI purchased any EAI stock. These deficiencies are fatal to Besing's primary securities fraud claim.

Besing also claims that Vickers aided and abetted other Defendants' securities fraud by allowing these Defendants to sell stock interstate and to pay commissions, both of which allegedly violate unspecified federal securities laws. While Besing does present evidence that Vickers knew of these technical violations, there is no evidence that these violations caused any damages to Besing or EAI, such as through an SEC enforcement action. Nor is there any evidence that anyone made any misrepresentation concerning these technical violations to either Besing or EAI, or that either Besing or EAI relied on any such misrepresentation. Since Besing has failed to prove the existence of a primary violation of the securities laws with respect to these alleged technical violations, he cannot establish aiding and abetting liability. Besing, therefore, has failed to put forth any genuine issue of material fact on any of his securities fraud claims.

Because the uncontroverted facts before the Court show that Vickers did not commit any predicate acts and that both Besing and EAI lack RICO standing to assert any of these predicate acts, the Court grants Defendants' motion as to Counts I and II.

## III.     SUPPLEMENTAL JURISDICTION.

Vickers argues that the Court lacks jurisdiction over Besing's pendent state law claims once it dismisses the federal claims pending against him and his firm. 18 U.S.C. § 1367(c) provides that the Court shall have supplemental jurisdiction unless one of the following factors

applies: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." While subsection (c)(3) would appear to apply here, this subsection "requires that *all* claims over which it has original jurisdiction must have been dismissed before a district court may rely on that provision as a basis for dismissing the supplemental claims. This refers to all claims in the case, not just those claims asserted against a particular defendant." James W. Moore, Moore's Federal Practice (3d ed. 1999), Vol. 16, § 106.66[1] at 106-88 (emphasis in original); *see also Gudenkauf v. Stauffer Communications, Inc.*, 896 F. Supp. 1082, 1084 (D. Kan. 1995) ("As long as one of the parties to the suit has federal claims pending against it, the court has mandatory supplemental jurisdiction over all claims and the parties related."). Since there are federal claims pending against several defendants, the Court must retain jurisdiction over the supplemental state law claims.

The Court has already found, as set forth above, that Vickers is entitled to summary judgment as a matter of law on Besing's claims based in fraud, so summary judgment is granted as to Count IV. However, neither side has addressed Besing's other state law claims for breach of fiduciary duty and negligence. The Court will give Vickers the opportunity to file a summary judgment motion on these Counts. If Vickers has grounds for such a motion, Defense counsel should notify the Court and the other parties by letter sent within five business days of the date when this Memorandum Opinion and Order is filed. The Court will then set a briefing schedule for the motion.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Bozarth & Vickers, P.C.'s and Ellis

Vickers' Motion for  Summary Judgment **[Doc. 153]** is hereby **GRANTED in part** as follows:

1. Judgment is granted in favor of Defendants Bozarth & Vickers, P.C. and Ellis Vickers on Counts I (RICO), II (Securities Fraud) and IV (Fraud);

2. Summary Judgment is denied on Counts III (Breach of Fiduciary Duty) and V (Negligence); and

3. Defendants Bozarth & Vickers, P.C. and Ellis Vickers must notify the Court and all parties whether they intend to file a summary judgment motion on Counts III and V within five days of the date when this Memorandum Opinion and Order is filed.

_____

MARTHA VÁZQUEZ
DISTRICT COURT JUDGE

Attorney for Plaintiffs:
Joe M. Romero, Jr.

Attorney for Ellis Vickers and Bozarth & Vickers P.C.
Richard E. Olson
Karolyn King Nelson

Attorney for Defendant Heatly:
R. Tracy Sprouls

Jerry France, *pro se*

Marvin Creamer, *pro se*

Margaret Lee, *pro se*