IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID J. BESING, Individually and
Derivatively on Behalf of
ENVIRONMENTAL
ADAPTATIONS, INC.,

        Plaintiffs,

vs.                                 No. CIV 95-1193 MV/KBM

JERRY FRANCE, MARVIN
CREAMER, MARGARET LEE,
LYNCO DISTRIBUTING, INC.,
GENE HEATLY, BOZARTH &
VICKERS, P.C., ELLIS VICKERS,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant Gene Heatly's Motion for Summary Judgment, filed June 4, 1998 **[Doc. 155]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED.**

### **PROCEDURAL BACKGROUND**

Plaintiff David Besing, acting *pro se,* filed his original Complaint in October of 1995. Plaintiff amended his Complaint twice before he obtained counsel. Plaintiff then filed a Third Amended Complaint. Count I of the Third Amended Complaint alleges a RICO claim based on predicate acts of mail and securities fraud. Count II alleges securities fraud. Counts III, IV and V allege state law claims for breach of fiduciary duty, fraud and negligence. Besing brings these

claims individually and derivatively on behalf of Environmental Adaptations, Inc. ("EAI"). Heatly is not named in Counts III or V.

Discovery closed on April 7, 1998. Defendant Heatly subsequently filed his motion for summary judgment on all counts.

**FACTUAL BACKGROUND**

The facts of this case[1] reveal that Plaintiff David J. Besing invented a biodegradable seed delivery product called the Grass Waffle. Besing filed a patent application with the United States Patent Office in June 1992, and was granted a patent for his invention on January 4, 1994.

In 1992, Besing went into business with Defendants Jerry France and Marvin Creamer to manufacture and sell the Grass Waffle. They formed a company called EAI. While Besing assigned certain unspecified rights in his patent to EAI in an Exclusive Licensing Agreement ("ELA"), he did not assign the patent itself to the company.

### A. Predicate Act Number 1 - Securities Fraud Involving Loan Papers.

Defendant Gene Heatly is an attorney licensed to practice in Texas. He represented EAI in at least two instances before EAI's President John Renfro hired him to represent EAI regarding a $100,000 development loan that Renfro had obtained for EAI through a community development program in Vernon, Texas. Renfro states in his Affidavit that he was aware that Heatly's firm represented Waggoner National Bank, which was one of the banks participating in the loan. Besing argues that the Court should disregard Renfro's statement because Renfro and Heatly have known each other as business associates for 15-20 years. While Heatly claims in his

---

[1] The Court identifies in its recitation those areas of disputed issues of facts. As set forth below, none of these disputed issues are relevant to the Court's resolution of Heatly's Motion.

Affidavit that the fact of his firm's representation of Waggoner National Bank "was known to the officers of EAI before [he] was hired to represent EAI in the transaction," (Affidavit of Gene Heatly, ¶ 15), this statement lacks foundation.

As part of the loan transaction, Heatly drafted an Assignment of Exclusive License Agreement and Amendment Thereto Between David Besing and Environmental Adaptations, Inc. Besing approved this assignment on three conditions: (1) that it did not transfer his patent; (2) that it did not relieve EAI from performance of its obligations to pay him royalties; and (3) that the bank and EAI place in escrow royalties of approximately $47,000 owed to Besing pursuant to the ELA. The Assignment gives the Bank a power of attorney to enforce all terms and conditions of the ELA and to undertake all obligations of EAI pursuant to the ELA.

Besing argues that this Assignment does not meet his second condition because it assigns EAI's obligations to the Bank. Heatly and the bank officer have submitted affidavits stating that the intent of the parties was to transfer the ELA as collateral only. The Promissory Note concerning the loan refers to a "Security Agreement on . . . an exclusive license agreement," which would support Heatly's claim. However, if this Security Agreement exists, it is not part of the record.

Finally, Heatly does not deny that a statement in the Assignment to the effect that EAI was current on its obligations under the ELA is false. Besing received approximately $47,000 in back royalties after EAI received the loan proceeds.

There is no evidence in the record showing that either EAI or Besing were harmed in any way by the nondisclosure of the conflict of interest, the assignment of EAI's obligations under the

ELA or the false statement in the Assignment. EAI made at least one royalty payment to Besing in addition to the $47,000 in back royalties after giving the Bank the Assignment.

Besing claims that Heatly's actions violate the securities fraud statute, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Securities and Exchange Commission Rule 10b-5, 17 CFR § 240.10b-5 (hereinafter referred to collectively as "Section 10(b)").

**B.     Second Predicate Act - Mail Fraud Involving Plan to Seek Patent.**

Ray Besing, Plaintiff's brother and attorney, testified that Heatly told him of a plan to prepare and file a new patent application in EAI's name that would be an improvement on Plaintiff's patent and therefore would supercede or be superior to Plaintiff's patent. (Plaintiff's Statement of Material Facts in Dispute ¶ 10.) There is no evidence that this patent application was ever filed or that any patent issued.

Besing claims that Heatly's involvement in this scheme to circumvent his patent and the ELA violates the federal mail fraud statute, 18 U.S.C. § 1341.

**C.     Predicate Act Number 3 - Mail Fraud Involving Trademark.**

Defendant Jerry France filed an application with the Patent and Trademark Office for the Grass Waffle mark. France did not tell Besing that he filed the application. Besing testified in his deposition that France told him that Heatly filed for the trademark for France because Heatly was the only person at the time who had the money to file it. (Appendix to Plaintiffs Response to Defendant Vickers Motion for Summary Judgment and Defendant Heatly's Motion for Summary Judgment (hereinafter "Plaintiff's Appendix"), Exhibit 1, Besing Dep. at 240.) Besing then testified that "he [Heatly] made out the actual application for the trademark for Jerry France and

4

had Jerry France sign something that both Mr. Heatly and Jerry knew was not true under oath." (*Id.*) It is unclear from the testimony whether Besing had any foundation for this last statement.

Heatly and France both submitted Affidavits denying that Heatly had anything to do with the trademark application. France testified at his deposition that he applied for the trademark to protect Besing because EAI was going to file for the mark if France did not do so. He testified further that he alone hired the trademark attorney and that Heatly did not help him with the application or ask France to file it. (Plaintiff's Appendix, Exhibit 5, France Dep. at 94-96.)

Besing claims that Heatly's conduct as part of a scheme to deprive him of the Grass Waffle trademark violates the federal mail fraud statute, 18 U.S.C. § 1341.

There is no evidence in the record of any damages suffered by the corporation as a result of Besing's claims. The only evidence of damages to Besing relates to damages for denial of his trademark application because of France's prior application and for lost sales of his patent, and payment of patent fees, attorney's fees and royalties allegedly owed him by EAI. (Plaintiff's Statement of Material Facts in Dispute ¶ 24.)

Heatly has moved for summary judgment claiming that no genuine issue exists as to any material fact. He has also moved to adopt the portion of Defendant Vicker's Memorandum of Law in Support of Motion for Summary Judgment that addresses the claim that Besing is not a proper derivative plaintiff.

The Court notes that Heatly's Opening Brief addresses numerous allegations in the Complaint concerning him. (*See Opening Brief* at 10-14, citing various paragraphs in the Complaint and allegations of Heatly's wrongdoing in Besing's answers to interrogatories.) However, Plaintiff has failed to pursue many of these allegations in his response to Heatly's

5

summary judgment motion. Whether this is because Plaintiff cannot prove these claims, the Court does not know. Regardless, by failing to press these arguments and by failing to produce any competent evidence in support of these claims in response to the motion for summary judgement, Plaintiff has failed to carry his burden in opposing summary judgment on these grounds. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court will therefore disregard these assertions.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

### I. BESING AND EAI LACK RICO STANDING.

RICO provides a private right of action under 18 U.S.C. § 1964(c) for violations of the statute. Under RICO,

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).

In other words, in order for a plaintiff to recover damages under the RICO statute, the plaintiff must show a violation of Section 1962(a), (b), (c) or (d), as well as an injury to business or property by reason of this violation. This latter "by reason of" requirement is one of causation, and is commonly referred to as RICO standing. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("plaintiff only has standing [under § 1964(c)] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation").

7

Pursuant to the requirement of RICO standing, merely committing the predicate offenses does not violate the RICO statute. The plaintiff must show that commission of the predicate acts caused him injury in his business or property. *Holmes v. SIPC*, 503 U.S. 258, 279 (1992). Only where proximate cause exists does a plaintiff have standing to raise a RICO claim. *Id.* Here, Besing does not have standing to assert two of the three predicate acts asserted against Heatly because he has not and cannot show that the predicate acts caused injuries to him. Besing lacks standing to assert any of the predicate acts derivatively on behalf of EAI because he has not and cannot show that the predicate acts caused injury to EAI.

    **A.**    **Conflict of Interest and Misrepresentations Concerning the Loan Documents.**

Besing alleges three fraudulent acts relating to the $100,000 development loan: Heatly's alleged undisclosed conflict of interest, as well as his drafting of the Assignment that allegedly transferred EAI's obligations under the ELA to the Bank[2] and that included the false statement that EAI was current on its obligations under the ELA. However, Besing presents no evidence that any of these acts harmed him or EAI. Starting with EAI, there is no evidence in the record that the alleged conflict of interest harmed the corporation, such as through terms in the agreement favorable to the Bank or any other way. Moreover, transferring the company's obligations to the Bank and the misstatement presumably benefitted EAI since the company would not have to pay Besing his royalties and the Bank would have been less likely to approve the loan had EAI stated that it was behind in its obligations. It is possible that the Bank could assert a claim based on these acts, since it was the target of the misrepresentation for example, but

---

[2]    The Court uses the word "alleged" here to reflect the disputed facts concerning these claims.

8

EAI lacks standing to do so. *See Garbade v. Great Divide Mining And Milling Corp*, 645 F. Supp. 808, 815-16 (D. Colo. 1986) (finding no RICO standing where alleged misrepresentations were made to third parties and not to plaintiff).

Besing, too, lacks standing to assert this claim on his own behalf. He had his own lawyer representing him in the only part of the bank loan that affected him– the Assignment of the ELA. That EAI's lawyer had a conflict with the Bank had no effect on Besing nor did the misrepresentation to the Bank concerning the status of EAI's obligations under the ELA. While the alleged Assignment of EAI's obligations under the ELA concerned Besing, he does not present any evidence that he suffered any harm as a result of it. EAI paid Besing $47,000 in past royalty payments once it received the loan proceeds. The only evidence in the record on the issue shows that he received at least one royalty payment from EAI after the Assignment was executed. Besing has not established that EAI's inability to continue paying him had anything to do with the Assignment or Heatly's work in drafting that Assignment, so he lacks RICO standing to assert this predicate act.

### B. The Patent Opinion.

Besing also lacks RICO standing to bring a claim based on Gene Heatly's and EAI's alleged decision to hire a patent attorney to prepare and file a new patent application that would be an improvement on Plaintiff's patent and therefore would supercede or be superior to Plaintiff's patent. Besing does not and cannot present any evidence that either of these actions caused him or EAI any harm. There is no evidence that the plan to file a new patent application ever went past the planning stage. Even if the plan had been successful, it would have benefitted

9

the company by allowing it to manufacture the product without paying royalties. Besing then cannot assert a RICO claim based on this predicate act.

Neither Besing nor EAI can satisfy the requirements of RICO standing on these two predicate acts alleged to involve Heatly.

### C. Grass Waffle Trademark Application.

The third predicate act alleged is the scheme to file a false trademark application for the GrassWaffle mark. Besing claims that his own trademark application was denied due to France's prior application and that this denial harmed him by requiring him to pay attorney's fees to investigate the denial and by delaying the issuance of his own trademark. Besing, then, has RICO standing to assert this claim. However, because Besing has failed to identify any harm caused to EAI by France's actions, EAI lacks standing to assert this claim.

## II. HEATLY DID NOT COMMIT ANY OF THE ALLEGED PREDICATE ACTS.

Even if Besing or EAI had standing to assert the RICO claim alleged, Besing has failed to show any disputed issue of material fact on the securities fraud or mail fraud claims. Besing has alleged violations of 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and 1962(d). Each of these sections of the RICO statute includes the element of a "pattern of racketeering activity." This element requires proof of "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Violations of mail fraud and securities fraud statutes are included in the definition of racketeering activity. 18 U.S.C. §§ 1961(1)(B), 1961(1)(D). These acts of racketeering are "often referred to as 'predicate acts' because they form the basis for liability under RICO." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The elements of mail fraud under 18 U.S.C. § 1341 are (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme. *Bacchus*, 939 F.2d at 892. "Actionable fraud in turn consists of (1) the misrepresentation of a fact, (2) known to be untrue by the maker, (3) made with an intent to deceive and to induce the other party to act in reliance thereon to his detriment." *Id.* A claim for mail fraud must establish "knowing participation by the defendant in a scheme to defraud." *U.S. v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997) (quoting *Hofmann v. United States*, 353 F.2d 188, 191 (10th Cir. 1965)); *see also U.S. v. Hagedorn*, 38 F.3d 520, 522 (10th Cir. 1994)(citation omitted) ("In order to establish a violation of § 1341, the government must show that the defendant either had guilty knowledge or that his 'indifference to the truth of statements made to induce others to action amounts to fraudulent intent.'").

In order to establish primary liability under Section 10(b), Besing must allege and prove: "(1) that the defendant made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that the defendant made the statement or omission with scienter; and (4) that the plaintiff relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation." *Anixter v. Home-Stake Production*, 77 F.3d 1215, 1225 (10th Cir. 1996); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). A securities fraud violation requires that the defendant acted "knowingly with intent to deceive or defraud." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992).

### A. Securities Fraud.

Besing's claim for securities fraud fails as a matter of law because the loan papers at issue here are not "securities" within the meaning of the securities laws. *Reves v. Ernest & Young,* 494 U.S. 56, 65 (1990). As the Supreme Court explained in *Reves*, "because the Securities Acts define 'security' to include 'any note,' we begin with a presumption that every note is a security." *Id.* However, this presumption is rebuttable because "Congress was concerned with regulating the investment market, not with creating a general federal cause of action for fraud." *Id.* The Supreme Court went on to adopt the Second Circuit's list of instruments commonly denominated as "notes" that nonetheless fall outside of the "securities" category and to establish a four-factor test for Courts to apply to notes that do not resemble one of the notes on that excluded list. *Id.* at 66-67. One of the specifically enumerated "notes" that is not included in the definition of "securities" is a note evidencing loans by commercial banks for current operations. *Id.* at 65 (quoting *Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930, 939 (2d Cir. 1984).

All of the evidence in the record establishes that EAI's loan was such a note. The loan was granted by a community development agency and EAI used almost half of the proceeds to get caught up on payments owed to Besing. There is no evidence that EAI's purpose in obtaining the loan was to finance investments, that it is an instrument in which there is "common trading for speculation or investment," or that the investing public considered the note a "security," all of which are required before the Court could find that the note at issue falls within the definition of "securities." *See Reves*, 494 U.S. at 66-67. The loan papers, then, are not regulated by the securities laws and nothing Heatly did in drafting those papers can constitute securities fraud.

Besing argues that the participation by other banks in the loan and the guarantee of the

loan are "securities." However, he does not claim that Heatly had anything to do with these documents or that there is anything fraudulent about those documents. Even if he did, the Court finds that the documents in question are not regulated by the securities laws. Participations in a specific loan by other banks are not "securities." *Banco Español de Credito v. Security Pacific National Bank*, 973 F.2d 51 (2d Cir. 1992).[3] Neither is a guarantee of any such loan since there is no evidence that the guarantee was extended for investment rather than commercial purposes. The case cited by Besing in support of his claim, *Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 692 (E.D. Va. 1990), is not to the contrary since it holds that a guarantee of a "security" as defined by the securities laws also falls within the definition of a "security." Here, the underlying loan agreement is not a "security" and neither are the participations in the loan or the guarantee of the loan.

Besing's claim of securities fraud against Heatly must fail because the documents that form the basis of his claim are not "securities."

### B. The Patent Opinion.

Besing's second predicate act alleges a scheme by which certain Defendants would deprive him of his patent by applying for a patent that would supercede his. Besing has not presented any evidence that there was any misrepresentation to anyone concerning the lawful act of applying for a superior patent. Nor has he presented any evidence that he or EAI relied on any such misrepresentation. To the extent that Besing's claim is based on Heatly's failure to tell him

---

[3] The Court notes that the *Banco Español* court relied on evidence that is not available here, such as the motivation of the banks involved. However, Besing has failed to present any evidence supporting his claim that the participations are "securities," and the Court finds from the face of the documents that the documents do not meet the four-part *Reves* test.

of this scheme, he has failed to allege any duty owed him by Heatly, who did not represent Besing. *Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based on nondisclosure, there can be no fraud absent a duty to speak."); *R.A. Peck, Inc. v. Liberty Federal Savings Bank*, 108 N.M. 84, 87 (Ct. App. 1988) ("[W]here one is under a duty to speak but remains silent and fails to disclose a material fact, he may be liable for fraud."). Thus, Besing has failed to make a sufficient showing on these essential elements of mail fraud.

### C. Scheme to Obtain the Grass Waffle Trademark.

Besing alleges that Heatly was involved in a scheme to deprive him of the Grass Waffle trademark, either by failing to tell him that France intended to file for the trademark or by submitting false information to the Patent and Trademark Office. Besing has not established that Heatly had any duty to tell him that France was filing for the trademark, so he has no claim based on Heatly's failure to act.

Besing may sue for injuries by "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation." 15 U.S.C. § 1120. However, to state a claim, Besing must show that the statements "(1) were made with knowledge of their falsity, and (2) were material to the determination to grant the application." *Buti v. Impressa Perosa, S.r.l.,* 935 F. Supp. 458, 474 (S.D.N.Y. 1996), *aff'd*, 139 F.3d 98 (2d Cir.), *cert. denied*, 119 S. Ct. 73 (1998); *see also Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986) (fraud consists of making knowingly inaccurate or knowingly misleading statements in a trademark application). The only evidence in the record concerning the statements is Besing's testimony that Heatly had France sign an application that they both knew was not true. It is not even clear that Besing's statement has sufficient foundation, much less

14

what false statements were made, whether Heatly knew the statements were false or whether the statements were material. Moreover, the Court questions whether fraud in obtaining a trademark, which involves making a false statement to the Patent and Trademark Office rather than the plaintiff, can be a predicate act under RICO. *See B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 169 (S.D.N.Y. 1996) (because plaintiffs did not rely on defendants' alleged misrepresentations to the PTO, claim of fraudulent patent procurement cannot be predicate acts of mail or wire fraud under RICO); *Universal Manufacturing Co. v. Douglas Press, Inc.*, No. 89 C 3354, 1991 U.S. Dist. LEXIS 6279, at *8-*11 (N.D. Ill. May 8, 1991) (authorizing and directing mailing of fraudulent trademark and copyright applications cannot be predicate act of mail fraud under RICO because victim of scheme was United States Copyright and Trademark offices rather than plaintiff).

For all of these reasons, Besing has failed to establish his claim of mail fraud based on the trademark application as a matter of law. Because he has also failed to establish any disputed issue of material fact on his other mail fraud claim or his securities fraud claim, the Court grants summary judgment in favor of Heatly on Counts I and II.

**III. FRAUD CLAIM.**

Besing's fraud claim is based on the same actions as his RICO and securities fraud claims. As set forth above, Besing has failed to establish that Heatly committed fraud against him or EAI. The Court therefore grants summary judgment on Count IV of the Complaint.

**CONCLUSION**

15

**IT IS THEREFORE ORDERED** that Defendant Gene Heatly's Motion for Summary Judgment **[Doc. 155]** is hereby **GRANTED in its entirety.**

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiffs:
Joe M. Romero, Jr.

Attorney for Defendant Heatly:
R. Tracy Sprouls

Attorney for Ellis Vickers and Bozarth & Vickers P.C.
Richard E. Olson
Karolyn King Nelson

Jerry France, *pro se*

Marvin Creamer, *pro se*

Margaret Lee, *pro se*