IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID J. BESING, Individually and
Derivatively on Behalf of
ENVIRONMENTAL
ADAPTATIONS, INC.,

        Plaintiffs,

vs.                               No. CIV 95-1193 MV/KBM

JERRY FRANCE, MARVIN
CREAMER, MARGARET LEE,
LYNCO DISTRIBUTING, INC.,
GENE HEATLY, BOZARTH &
VICKERS, P.C., ELLIS VICKERS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Ellis Vickers' and Bozarth & Vickers' Motion for Partial Summary Judgment, filed August 10, 1999 **[Doc. No. 203]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED.**

### PROCEDURAL BACKGROUND

Plaintiff David Besing, acting *pro se,* filed his original Complaint in October of 1995. Plaintiff amended his Complaint twice before he obtained counsel. Plaintiff then filed a Third

Amended Complaint, and Magistrate Judge Puglisi denied Defendants Bozarth & Vickers' and Ellis Vickers' Motion to Dismiss by Memorandum Opinion and Order filed September 26, 1997. Count I of the Third Amended Complaint alleges a RICO claim based on predicate acts of mail and securities fraud. Count II alleges securities fraud. Counts III, IV and V allege state law claims for breach of fiduciary duty, fraud and negligence. Besing brings these claims individually and derivatively on behalf of Environmental Adaptations, Inc. ("EAI").

Discovery closed on April 7, 1998. Defendants Bozarth & Vickers and Ellis Vickers subsequently filed a motion for summary judgment on all counts **[Doc. No. 191]**. The Court granted Defendants' motion as to the federal law claims and granted leave for these Defendants to file for summary judgment on the state law claims. Defendants filed their motion on August 10, 1999, and the motion is fully briefed.

## FACTUAL BACKGROUND

The facts of this case[1] reveal that Plaintiff David J. Besing invented a biodegradable seed delivery product called the Grass Waffle. Besing filed a patent application with the United States Patent Office in June 1992, and was granted a patent for his invention on January 4, 1994.

In 1992, Besing went into business with Jerry France and Marvin Creamer to manufacture and sell the Grass Waffle. Besing, France and Creamer sought the aid of Gene Simmons at the Small Business Development Center at Eastern New Mexico University, Roswell. Simmons

---

[1] The Court identifies in its recitation those areas of disputed issues of facts. As set forth below, none of these disputed issues are relevant to the Court's resolution of this Motion.

2

recommended Defendant Ellis Vickers as a Roswell attorney who had helped other small businesses.[2]

Vickers did not know Besing, Creamer or France prior to the time when they approached him to incorporate their company. Vickers drafted corporate documents, including Articles of Incorporation, By-Laws and Shareholders' Agreement for the new Texas company, called EAI. The company was incorporated on April 28, 1993. The parties dispute whether Vickers was acting both as Besing's private lawyer and as EAI's attorney or whether he was acting solely as EAI's attorney.

After the first shareholders' meeting, Besing served as President of EAI, Creamer served as Vice-President of Sales & Marketing and Treasurer, and France served as Vice-President of Manufacturing & Production and Secretary. Vickers drafted an Exclusive Licensing Agreement ("ELA"), executed by Besing and EAI in May of 1993, by which Besing assigned certain unspecified rights in his patent to EAI. The ELA provides that Besing will receive royalties based on the total number of square feet of Grass Waffle product capable of being produced and based on sales of the Grass Waffle by EAI or its sublicensees.

Besing resigned as President in early January 1994. Besing remains a shareholder, although there is no evidence in the record to inform the Court on whether Besing has the right to vote on corporate decisions. The only evidence in the record related to this issue is Vickers' statement in his Affidavit filed in support of his original summary judgment motion that unanimity between Besing, Creamer and France was not required by the applicable corporate statutes or the

---

[2] Because the allegations against Vickers' firm, Bozarth & Vickers, are predicated entirely on the actions of and allegations against Vickers, the Court will refer to both Defendants as "Vickers."

governing document of EAI.

There is no evidence in the record that the Grass Waffle was ever manufactured or available for sale. EAI filed a form with the Texas Employment Office indicating that EAI's business in Texas was suspended or discontinued entirely as of September 26, 1994. In addition, Besing notified EAI that he terminated the amended ELA on October 3, 1994.

### A. Drafting the EDRA

In December 1993, at the request of Creamer, Vickers began drafting an Exclusive Distribution Rights Agreement ("EDRA"). The EDRA gave the other party, originally called LDI, later revised to Lynco Distributing, Inc. ("Lynco"), the exclusive right to buy all of the Grass Waffles manufactured by EAI and the exclusive right to sell these Grass Waffles within a four hundred mile radius of Vernon, Texas.

The draft prepared by Vickers had signature lines for Creamer on behalf of EAI and for George Carr on behalf of Lynco. Sometime after Vickers sent the final draft to Besing, Creamer changed the signatory for Lynco to Margaret Lee, who is Creamer's common law wife. Vickers did not know about the relationship between Lee and Creamer until Besing told him about it.

Although Besing claims that he did not find out about the EDRA until after it had been executed by Creamer and Lee (Plaintiffs' Disputed Material Facts No. 2), he testified during his deposition that he learned that Vickers was drafting a document called the EDRA in December 1993 when he reviewed Vickers' bills. (Appendix to Defendants' Ellis Vickers and Bozarth & Vickers Memorandum in Support of Motion for Summary Judgment (hereinafter "Defendants' Appendix"), Exhibit A, Besing Dep. at 169.)

Besing also claims that Vickers failed to notify EAI that he was drafting the EDRA.

4

However, Jerry France testified that he did not remember when he learned about the EDRA (France Dep. at 90-91.) and Creamer asked Vickers to draft it. Besing fails to identify anyone else at EAI whom he alleges Vickers should have notified.

Besing further claims that Vickers was aware that the EDRA violated EAI's corporate by-laws and the ELA, which Besing alleges gave EAI the exclusive right to market and sell the Grass Waffle. However, the only corporate by-laws provision in the record is the procedure to be followed in an interested director situation. It is undisputed that Vickers did not know of the relationship between Creamer and Lee at the time when he drafted the EDRA, so no violation of the by-laws is implicated. Moreover, the portion of the ELA in the record refers to sales by EAI and sublicensees, which indicates that entities other than EAI could or would have the authority to sell and market the Grass Waffle.

Besing also claims that the drafting of the EDRA was not authorized by EAI's board or its President. Again, though, the evidence cited does not support this claim. Plaintiffs cite to France's testimony, in which he says that he does not remember when he saw the EDRA for the first time. Plaintiffs also point to a recorded telephone conversation between Plaintiff Besing's brother and attorney Ray Besing and Ellis Vickers in which Vickers states that he has no evidence that Creamer followed the interested director provisions in EAI's articles of incorporation or that he disclosed his relationship with Lynco through Margaret Lee to Besing or France. However, it is impossible to determine from these statements whether Vickers has personal knowledge of Creamer's actions involving third parties other than Vickers. Even assuming that this document creates a disputed issue of fact concerning the ratification process, it says nothing about whether the drafting of the EDRA was authorized. Finally, the Court notes Plaintiffs' own statement that

Marvin Creamer was de facto running EAI during this time period, and it was Creamer who asked Vickers to draft the EDRA. (Plaintiffs' Claims and Evidence for Trial, ¶ 4(a).)

The damages claimed by Plaintiffs are sales by Lynco pursuant to the EDRA of four distributorships that should and would have been made by EAI absent the EDRA and alleged lost royalty payments for Besing. They also claim EAI funds used to pay Vickers for drafting the EDRA.

Besing claims that Vickers' conduct in drafting the EDRA constitutes negligence and breach of fiduciary duty.

### B. Failure to Advise of Violations of Securities Laws.

At the request of Besing, Creamer and France, Vickers prepared their stock certificates as well as the certificates for all new shareholders. When he received a signed subscription agreement from EAI, Vickers had the stock certificates filled out to conform with the information received on the subscription agreement and forwarded them to the appropriate EAI officer for signature and delivery to the shareholder. Vickers did not sell EAI stock. Besing claims that Vickers knew that stock was being sold interstate, which Besing claims takes a company's stock sales outside of an exemption from federal securities laws. (Plaintiff's Statement of Material Facts in Dispute filed with original summary judgment motion ¶¶ 18, 21.) The evidence supporting this claim is an unauthenticated stock transfer ledger showing addresses outside of Texas and an unauthenticated letter signed by Gene Heatly, another defendant, addressed to an out-of-state stockholder and copied to Vickers.

Besing claims further that Vickers knew that Creamer and others selling stock for EAI were paying commissions, which he alleges violates state and federal laws limiting commissions to

6

sales by licensed broker-dealers. (*Id.* ¶ 23.) While Besing has submitted evidence that Creamer paid a commission for the sale of stock, (*id.*), he has not presented any evidence that Vickers knew about this commission payment or any other commission payment to people selling EAI stock.

In addition, Besing claims that Creamer and others were selling EAI stock using a prospectus or business plan that contained material omissions. (Plaintiff's Memorandum at 5.) There is no evidence in the record that Vickers had any involvement with the prospectus or that he knew of its contents.

Besing claims that Vickers' failure to advise EAI of these securities laws violations constitutes breach of fiduciary duty and negligence. The record contains no evidence of any damages suffered by Besing or EAI as a result of Vickers' conduct.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go

7

beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

The Court finds that Plaintiffs have failed to make a sufficient showing on required elements of their claims of breach of fiduciary duty and negligence. To prove breach of fiduciary duty, Plaintiffs must show that a fiduciary relationship existed between Vickers and each Plaintiff, that Vickers breached his fiduciary duty, and that this breach caused each Plaintiff's damages. *See, e.g., Restatement Torts (2d)* § 874; *Jacobs v. Phillipi*, 102 N.M. 449, 451 (1985). To prove negligence, Plaintiffs must show that Vickers owed each of them a duty of care, that he breached that duty and that this breach proximately caused each of their damages. *See, e.g., Tafoya v. Seay Bros. Corp.*, 119 N.M. 350, 352 (1995). Given the dispute about whether Vickers owed Besing a

8

fiduciary or any other duty, the Court will assume that this element is met for each cause of action. Even with this assumption, neither Plaintiff can prevail on these claims.

## I. DRAFTING THE EDRA.

Plaintiffs allege three breaches of duty relating to the EDRA: Vickers' failure to tell Besing and EAI that he was drafting the EDRA; Vickers' failure to ensure that the EDRA was consistent with provisions in EAI's by-laws and with the provisions in the ELA that gave EAI the exclusive right to market and sell the Grass Waffle; and Vickers' acceptance of the job of drafting the EDRA when that job had not been authorized by EAI. The damages alleged are lost profits for distributorships sold by Lynco pursuant to the EDRA that would have accrued to EAI and Besing's lost royalties.

Plaintiffs do not set forth sufficient evidence on any of these claims. Beginning with the failure to notify, Plaintiffs cannot show that this breach caused any harm since Besing and EAI learned of the EDRA before it was ratified by the shareholders. Besing learned of it by reviewing Vickers' December bills; Creamer asked Vickers to draft it; and France testified that he did not remember when he first learned of the EDRA (France Dep. at 93.). Since Lynco could not have sold the distributorships unless the EDRA was approved by EAI, any failure to notify the Plaintiffs did not cause them any harm.

Moving to the second claim, there is no evidence that Vickers breached any duty to ensure that the EDRA was consistent with the provisions of the by-laws and the ELA. The only portion of the by-laws in the record relates to interested director transactions, and there is no evidence that Vickers knew of the relationship between Creamer and Lee when he drafted the EDRA. The document he drafted did not even list Margaret Lee as a signatory; rather, it listed George Carr

9

and Creamer changed this part of the document after Vickers drafted it.  While Besing claims that the ELA gave EAI the exclusive right to market and sell the Grass Waffle, the only portion of the ELA in the record refers to sales by sublicensees, suggesting that the parties contemplated sales and marketing to be done by entities other than EAI.

Finally, the record does not contain any evidence supporting Plaintiffs' claim that EAI did not authorize Vickers' work in drafting the EDRA.  The Plaintiffs themselves state that Creamer, who asked Vickers to draft the EDRA, was running EAI at the time when the EDRA was prepared.

Nor can Besing show that he suffered any damages from any of these alleged breaches.  While he claims that he would have been entitled to royalties had EAI sold the distributorships sold by Lynco, the ELA provides royalties only for sales and manufacturing capacity.  The distributorship sales gave the purchasers the right to buy and sell the Grass Waffles, but did not represent any actual sales nor any manufacturing capability.  Since it was EAI rather than Besing that paid Vickers' legal bills, Besing cannot claim damages based on these payments.

## II. FAILURE TO ADVISE OF SECURITIES LAWS VIOLATIONS.

Plaintiffs claim that Vickers breached his fiduciary duty and was negligent in failing to advise EAI that Creamer and France were violating securities laws by selling EAI stock interstate, by paying commissions and by using a prospectus that contained false statements.  However, the evidence does not support any of these claims.  Plaintiffs have failed to set forth any evidence that Vickers knew that anyone was paying commissions or using a prospectus that contained false statements.  While there is some evidence that Vickers knew of the interstate stock sales, there is no evidence that these sales in any way harmed Besing or EAI.  While Besing claims that selling

stock interstate is a violation of the securities laws, he has presented no evidence that the Securities and Exchange Commission began an enforcement proceeding, that any purchaser of stock sued or any other kind of evidence showing harm to EAI.  Since Besing did not purchase or sell any stock, he too fails to show any harm caused by these sales.

### III. PLAINTIFFS' OBJECTIONS TO BRIEFING SCHEDULE.

Plaintiffs have made numerous objections to the schedule set by the Court for this Motion.  None of these objections have any merit.  While Plaintiffs claims that the Court did not provide fourteen days plus three days for mailing for their motion, the Court notes that Defendants filed their Motion on August 9, 1999, and served Plaintiffs' counsel by fax and overnight mail as required by the Court's Order setting the briefing schedule.  Plaintiffs served their response on August 25, 1999, sixteen days after receiving Defendants' brief.  Of course, the three days' additional time for mailing does not apply when a party is served by faster means, so Plaintiffs cannot claim any shortened briefing schedule for this Motion.  Moreover, despite Plaintiffs' protestations of insufficient time, the Court notes that they chose to ignore this Court's Order that service be by fax or overnight mail and served Defense Counsel by mail, even though Defense Counsel had only a week to prepare and file Defendants' reply brief.

Plaintiffs' objections based on their failure to receive Defendants' exhibits and to not receiving a requested continuance are equally unavailing.  There is no evidence that this failure to receive the exhibits was in any way intentional.  Defendants' Memorandum of Law refers to these exhibits, putting Plaintiffs' Counsel on notice that he should call Defense Counsel for copies of whatever was missing.  Finally, the Court did grant two days of Plaintiffs' requested week-long extension.  The Court notes that this case has been pending since 1995.  It is one of the oldest

cases on the Court's docket, making Plaintiffs' claims that briefing was "unnecessarily accelerated" hard to understand.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Bozarth & Vickers, P.C.'s and Ellis Vickers' Motion for Partial Summary Judgment **[Doc. No. 203]** is hereby **GRANTED.** Bozarth & Vickers, P.C. and Ellis Vickers are hereby dismissed from this action **with prejudice**.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiffs:
Joe M. Romero, Jr.

Attorney for Ellis Vickers and Bozarth & Vickers P.C.
Richard E. Olson
Marvin Creamer, *pro se*
Margaret Lee, *pro se*