IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID J. BESING, Individually and
Derivatively on Behalf of
ENVIRONMENTAL
ADAPTATIONS, INC.,

        Plaintiffs,

vs.                                No. CIV 95-1193 MV/KBM

JERRY FRANCE, MARVIN
CREAMER, MARGARET LEE,
LYNCO DISTRIBUTING, INC.,
GENE HEATLY, BOZARTH &
VICKERS, P.C., ELLIS VICKERS,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** is before the Court pursuant to its Order requesting further briefing filed July 16, 1999 **[Doc. No. 194]**. In that Order, the Court requested further briefing from Plaintiffs and responses by Defendants. The Court, having considered these submissions and relevant law, and being otherwise fully informed, finds that Plaintiffs have failed to come forward with any genuine issue of material fact on any of their federal claims, so the Court will **GRANT** summary judgment to the remaining Defendants, Marvin Creamer, Margaret Lee and Lynco Distributing, Inc., on these claims. Having dismissed all claims arising under federal law, the Court declines to

exercise continuing supplemental jurisdiction over Plaintiffs' state claims and dismisses them pursuant to 28 U.S.C. § 1367(c)(3).

## PROCEDURAL BACKGROUND

Plaintiff David Besing, acting *pro se,* filed his original Complaint in October of 1995. Plaintiff amended his Complaint twice before he obtained counsel. Plaintiff then filed a Third Amended Complaint. Count I of the Third Amended Complaint alleges a RICO claim based on predicate acts of mail and securities fraud. Count II alleges securities fraud. Counts III, IV and V allege state law claims for breach of fiduciary duty, fraud and negligence. Besing brings these claims individually and derivatively on behalf of Environmental Adaptations, Inc. ("EAI").

Discovery closed on April 7, 1998. Defendants Ellis Vickers, Bozarth & Vickers and Gene Heatly subsequently filed motions for summary judgment on all counts. The Court granted those motions as to the federal RICO and securities fraud claims as well as the state law claims asserted against Heatly. As the Court explained in its Order filed July 16, 1999, many of the grounds for granting summary judgment in favor of these Defendants seemed to apply to the claims made against the other Defendants. Noting that all of the Defendants implicated in the remaining federal claims are proceeding *pro se*, and the interests of judicial economy and the need to streamline the issues for trial, the Court ordered Plaintiff to: a) identify each predicate act and each securities fraud claim Plaintiffs intend to prove at trial; b) identify the Defendants alleged to have committed or been involved in the acts alleged; c) state how Besing and/or EAI have RICO standing to pursue each predicate act; d) submit admissible evidence in accompanying exhibits supporting Plaintiffs' claim of RICO standing; e) state the evidence supporting each element of

the predicate act or securities fraud alleged based on the listing of elements made by the Court in the Memorandum Opinion and Orders ruling on the Motions for Summary Judgment; and f) submit admissible evidence in accompanying exhibits supporting each element of Plaintiffs' claims of mail fraud, securities fraud and any other predicate acts alleged. The Court then ordered the remaining Defendants to respond.

Having received these documents, the Court now turns to the merits of the remaining federal claims.

## FACTUAL BACKGROUND

The undisputed facts of this case[1] reveal that Plaintiff David J. Besing invented a biodegradable seed delivery product called the Grass Waffle. Besing filed a patent application with the United States Patent Office in June 1992, and was granted a patent for his invention on January 4, 1994.

In 1992, Besing went into business with Defendants Jerry France and Marvin Creamer to manufacture and sell the Grass Waffle. They formed a company called EAI. While Besing assigned certain unspecified rights in his patent to EAI in an Exclusive Licensing Agreement ("ELA"), he did not assign the patent itself to the company. Pursuant to the ELA, Besing is entitled to royalties based on the total number of square feet of Grass Waffle product capable of being produced and based on sales of the Grass Waffle by EAI or its sublicensees.

---

[1] Because Defendants Marvin Creamer and Margaret Lee did not submit any evidence in admissible form, the Court has not relied on their submissions in evaluating Plaintiffs' remaining federal claims. Essentially, the Court has accepted Plaintiffs' factual allegations as true and undisputed unless the evidence cited does not support Plaintiffs' contention.

There is no evidence in the record that the Grass Waffle was ever manufactured or available for sale. EAI filed a form with the Texas Employment Office indicating that EAI's business in Texas was suspended or discontinued entirely as of September 26, 1994. In addition, Besing notified EAI that he terminated the amended Exclusive Licensing Agreement on October 3, 1994.

### A. Mail Fraud Involving the EDRA.

In December 1993, Creamer asked Ellis Vickers, EAI's attorney, to draft an Exclusive Distribution Rights Agreement ("EDRA"). The EDRA gave the other party, originally called LDI, later revised to Lynco Distributing, Inc. ("Lynco"), the exclusive right to buy all of the Grass Waffles manufactured by EAI and the exclusive right to sell these Grass Waffles within a four hundred mile radius of Vernon, Texas.

On January 18, 1994, Creamer on behalf of EAI and Margaret Lee on behalf of Lynco executed the EDRA. Plaintiffs claim that neither EAI's Board nor its President authorized the EDRA. However, Plaintiffs do not cite to and the Court has not found any evidence in the record to support this claim. Plaintiffs also claim that Creamer failed to disclose to Besing or anyone else at EAI the fact that Lee is his common law wife. However, the evidence does not support this claim either. Besing testified that he had his attorneys run a check and he found out that Margaret was involved in Lynco. Besing then advised Creamer not to sign the EDRA, but it was eventually entered into anyway. (Besing Dep. at 162, 186-87.). This testimony suggests that Besing knew of Lee's involvement prior to the execution of the EDRA. Jerry France testified that he did not remember whether he learned of Lee's involvement before or after the EDRA was signed.

4

(France Dep. at 90-91.) He also testified that the EDRA was approved at a shareholders' meeting. (*Id.* at 92.)

The record is silent as to the knowledge of any other EAI directors or officers. Plaintiffs do point to a recorded telephone conversation between Plaintiff Besing's brother and attorney Ray Besing and Ellis Vickers in which Vickers states that he has no evidence that Creamer followed the interested director provisions in EAI's articles of incorporation or that he disclosed his relationship with Lynco through Margaret Lee to Besing or France. However, it is impossible to determine from these statements whether Vickers has personal knowledge of Creamer's actions involving third parties other than Vickers. For purposes of this Order, the Court will assume that Plaintiffs have submitted sufficient evidence to show that Creamer concealed his relationship with Lee and failed to follow the interested director procedures.

Plaintiffs claim that Creamer usurped a corporate opportunity of EAI because the EDRA allowed Lynco to sell four distributorship franchise at a price of $15,000 per distributorship. Absent the EDRA, Plaintiffs explain, EAI could have sold these distributorships, allowing EAI and the shareholders to reap these profits.

Plaintiff Besing claims damages in his individual capacity because the EDRA breached the exclusive right to sell he granted to EAI in the ELA. However, the ELA itself refers to sales by EAI or its sublicensees, indicating that entities other than EAI would have the authority to sell the Grass Waffle. Moreover, Besing does not explain how this breach caused him harm in light of the lack of any ability to manufacture the Grass Waffle by EAI or anyone else. He does claim that the distributorships sold by Lynco represent potential royalties to him pursuant to the ELA. However this claim is refuted by the terms of the ELA, which provide that Besing is entitled to royalties

5

based solely on manufacturing capacity and sales of the Grass Waffle. Sales of the ability to sell the Grass Waffle, which is what was provided by the distributorship franchises, are not covered by the royalty provisions of the ELA.

The use of mails alleged by Plaintiffs is the mailing of drafts and the execution of the EDRA. However, Plaintiffs do not allege that the EDRA contains any misrepresentations. The signature line of the document as executed shows that Margaret Lee signed on behalf of Lynco. It was Creamer's omission of his relationship with Lee that created the misrepresentation.

In addition to claims concerning Creamer's usurpation of a corporate opportunity to sell distributorship franchises, Plaintiff alleges that Creamer and Lee sent false information to the four Lynco distributors and potential investors. However, there is no evidence that these alleged misrepresentations were made to EAI or to Besing.

Finally, Plaintiffs repeat their claims concerning Ellis Vickers' involvement in the scheme to defraud involving the EDRA. Plaintiffs have not made any arguments or included any evidence as to Vickers that was not included in the motion previously ruled on by the Court.

### B. Securities Fraud Involving Stock Sales.

Plaintiffs claim that Creamer and France misapplied money collected from stock sales for their own personal benefit by taking impermissible commissions from the sale of stock, paying themselves salaries and paying attorney's fees for non-corporate purposes. However, the deposition transcript cited by Plaintiffs for this claim states only that Creamer left a commission for someone else.

In addition, Plaintiffs make claims about France and Creamer selling stock interstate and using a prospectus that contained false representations. These representations were made to

6

potential investors, not to EAI or to Besing. Moreover, while Besing claims that the sale of stock interstate and the payment of commissions violated securities laws, the only damages he claims are a loss of reputation to EAI and a decrease in value of EAI's stock. Plaintiff cites no evidence for these damages claims, nor does he allege any damage to him personally.

Plaintiffs repeat their claims concerning Gene Heatly and Vickers' involvement in this alleged securities fraud. Plaintiffs have not made any arguments or included any evidence as to Heatly or Vickers that was not included in the motion previously ruled on by the Court.

### C. Mail Fraud Involving Trademark.

Plaintiffs' trademark claims involve France and Heatly. France was dismissed from this case with prejudice pursuant to the Court's Order filed August 16, 1999 **[Doc. No. 206]**. Plaintiffs have not made any arguments or included any evidence as to Heatly that was not included in the motion previously ruled on by the Court.

### STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support

the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

### I. COURT'S ABILITY TO ENTER SUMMARY JUDGMENT *SUA SPONTE*.

Plaintiffs object to the Court's Order requiring further briefing on grounds that there are no pending motions filed by the *pro se* Defendants and that the submission of Plaintiffs' Claims and Evidence for Trial cannot serve as a summary judgment motion for those Defendants. However, "[d]istrict courts are widely acknowledged to possess the power to enter summary

judgment *sua sponte*." *Celotex*, 477 U.S. at 326. As the Tenth Circuit has explained, the entry of summary judgment *sua sponte* is appropriate when there is no dispute of material fact and "the losing party has had an adequate opportunity to address the issues involved, including an adequate time to develop any facts necessary to oppose summary judgment." *David v. City and County of Denver*, 101 F.3d 1344, 1359 (10th Cir. 1996), *cert. denied*, 118 S. Ct. 157 (1997). In the case at hand, discovery closed over a year ago, and Plaintiffs responded to two summary judgment motions made by other Defendants that raised issues similar to those addressed in this Memorandum Opinion and Order. Finally, the Plaintiffs were on notice that the Court did not believe that some or all of their federal claims could withstand summary judgment pursuant to the Court's Order requesting further briefing **[Doc. 194]**. *See, e.g., Holt v. Meng*, No. 94-3380, 1998 U.S. Dist. LEXIS 20474, at *6-*7 (D. Kan. Sept. 21, 1998) (Court's order to show cause put losing party on notice).

The Court has the authority to enter summary judgment pursuant to its Order requesting further briefing based on Plaintiffs' submission and finds that judicial economy requires that the Court not proceed to trial on claims for which there is no genuine issue of material fact or as to which there is an absence of evidence to support Plaintiffs' case.

**I.   BESING AND EAI LACK RICO STANDING**.

RICO provides a private right of action under 18 U.S.C. § 1964(c) for violations of the statute. Under RICO,

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

9

18 U.S.C. § 1964(c).

In other words, in order for a plaintiff to recover damages under the RICO statute, the plaintiff must show a violation of Section 1962(a), (b), (c) or (d), as well as an injury to business or property by reason of this violation. This latter "by reason of" requirement is one of causation, and is commonly referred to as RICO standing. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("plaintiff only has standing [under § 1964(c)] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation").

Pursuant to the requirement of RICO standing, merely committing the predicate offenses does not violate the RICO statute. The plaintiff must show that commission of the predicate acts caused him injury in his business or property. *Holmes v. SIPC*, 503 U.S. 258, 279 (1992). Only where proximate cause exists does a plaintiff have standing to raise a RICO claim. *Id.* Here, Besing does not have standing to assert his RICO claims based on misrepresentations made in the sale of Lynco distributorships, or in communications to Lynco distributors and potential investors because he has not and cannot show that any of these predicate acts caused injuries to him or to EAI. Neither Besing nor EAI bought distributorships. Neither Besing nor EAI were potential Lynco investors who were subject to the alleged misrepresentations. It is possible that Lynco distributors or potential Lynco investors could assert a claim based on these acts, since they were the targets of the misrepresentation for example, but EAI and Besing lack standing to do so. *See Garbade v. Great Divide Mining And Milling Corp*, 645 F. Supp. 808, 815-16 (D. Colo. 1986), *aff'd*, 831 F.2d 212 (10th Cir. 1987) (finding no RICO standing where alleged misrepresentations were made to third parties and not to plaintiff).

Plaintiffs' claims concerning EAI's stock sales are similarly deficient. Neither Besing nor EAI were harmed by EAI's interstate stock sales, its payment of commissions for stock sales or any misstatements or omissions in the prospectus. Besing did not purchase any stock, so he cannot allege that any illegal practices or misrepresentations involving those sales harmed him. *See Powers v. British Vita, plc,* 57 F.3d 176, 188 (2d Cir. 1995) (finding plaintiff who neither bought nor sold securities lacked RICO standing to pursue predicate act of securities fraud); *Pelletier v. Zweifel*, 921 F.2d 1465, 1510-11 n.80 (11th Cir. 1991) (finding plaintiff failed to prove the alleged securities fraud damaged him because he did not purchase any of the stock at issue); *Garbade v. Great Divide Mining and Milling Corp*, 645 F. Supp. 808, 815-16 (D. Colo. 1986) (finding no RICO standing where alleged misrepresentations were made to third parties and not to plaintiff). And presumably EAI benefitted from these practices, which allowed the company to sell stock it might not have sold had it not sold stock interstate, not paid commissions and had it been truthful in its prospectus. *In re American Express Shareholder Litigation*, 39 F.3d 395, 399-400 (2d Cir. 1994) (finding corporate shareholders lacked RICO standing because corporation's scheme was intended to benefit rather than harm the corporation).

Neither Besing nor EAI can satisfy the requirements of RICO standing on these predicate acts. Moreover, Besing cannot satisfy the requirements of RICO standing on the claims based on Creamer's failure to disclose his relationship with Lee. Besing claims that the breach of the ELA harmed him through the delegation of the exclusive right to sell the Grass Waffles and lost royalties due to sales of distributorships that should have been made by EAI. However, the only excerpt of the ELA in the record refers to sales by sublicensees as well as by EAI and does not provide royalties for sales of distributorships. While EAI has standing due to its loss of profits,

11

Besing does not.

## II. MAIL FRAUD INVOLVING CREAMER'S USURPATION OF A CORPORATE OPPORTUNITY.

The only predicate acts remaining, which can only be asserted by EAI, are mail fraud by Defendants in hiding Creamer's relationship with Lee in order to ensure EAI's ratification of the EDRA. To establish a RICO violation based on theses acts, EAI must show a "pattern of racketeering activity." 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and 1962(d). This element requires proof of "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Violations of mail fraud and securities fraud statutes are included in the definition of racketeering activity. 18 U.S.C. §§ 1961(1)(B), 1961(1)(D). These acts of racketeering are "often referred to as 'predicate acts' because they form the basis for liability under RICO." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The elements of mail fraud under 18 U.S.C. § 1341 are (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme. *Bacchus*, 939 F.2d at 892. "Actionable fraud in turn consists of (1) the misrepresentation of a fact, (2) known to be untrue by the maker, (3) made with an intent to deceive and to induce the other party to act in reliance thereon to his detriment." *Id.*

While "racketeering activity" is fairly straightforward, the term "pattern" is less well defined. The Supreme Court has explained that to meet the "pattern" requirement, plaintiffs must show two elements – "continuity plus relationship." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted). The Tenth Circuit has explained that "'[c]ontinuity is

both a closed- and open-ended concept; closed-ended referring to a closed period of repeated conduct and open-ended referring to conduct that by its nature projects into the future with a threat of repetition." *RTC v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). In evaluating continuity, the Court must consider that "mail and wire may deceptively create the appearance of a pattern because often the mailing or use of wires is 'only tangentially related to the underlying fraud' and is only 'a matter of happenstance.'" *Id.* at 1544 (quoting *United States Textiles, Inc. v. Anheiser-Busch Companies, Inc.*, 911 F.2d 1261, 1268 (7th Cir. 1990).

While the Supreme Court has held that plaintiffs need not allege more than one scheme to satisfy the "pattern" element of a RICO claim, *H.J.*, 492 U.S. 229, the Tenth Circuit has held that allegations of predicate acts involving "a common scheme executed against common victims for a single goal" cannot meet the continuity requirement. *Boone v. Carlsbad Bancorporation, Inc*, 972 F.2d 1545, 1556 (10th Cir. 1992); *see also Sil-Flo Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (same); *United States Textiles*, 911 F.2d at 1267-69 (no pattern even though scheme involved multiple predicate acts of mail fraud where there was only one victim, one dishonest undertaking and identical economic injuries stemming from a single contract).

In *Boone*, the plaintiffs were minority shareholders who filed RICO claims against majority shareholders who had allegedly depressed the value of the shares by using a merger to transfer certain debt to the corporation. 972 F.2d at 1550. As predicate acts, plaintiffs alleged that defendants formed a holding company, held secret negotiations to arrange for assumption of certain liabilities, approved the merger for their own benefit, pressured plaintiffs to accept a low share value, canceled certain shares and obstructed an appraisal. *Id.* at 1555. The Tenth Circuit found that these allegations failed to meet the pattern requirement because plaintiffs had alleged

13

"what is actually a closed-ended series of predicate acts constituting a single scheme (the transfer of debt) to accomplish a discrete goal (the merger) directed at a finite group of individuals (CNB shareholders) 'with no potential to extend to other persons or entities.'" *Id.* at 1556 (citation omitted). The Court found that plaintiffs did not allege the type of long-term criminal activity that Congress intended RICO to address. *Id.*

In the case at hand, it is doubtful whether Plaintiffs can show that Creamer, Lee or Lynco committed the predicate acts of mail fraud involved in EAI's ratification of the EDRA. Plaintiffs have not presented any evidence that the EDRA itself was in any way fraudulent. The EDRA listed Lee's name as signatory for Lynco. It was not the document itself that was improper or misleading; rather, Plaintiffs allege that it was Creamer's failure to disclose his relationship to Lee that allowed him to usurp EAI's corporate opportunity and allowed Lynco to earn profits through the sale of distributorship franchises that allegedly belonged to EAI.[2]

Even if Plaintiffs could surpass this hurdle, Creamer's alleged scheme cannot meet the pattern requirement. Plaintiffs allege that Creamer committed a closed-end series of predicate acts constituting a single scheme to usurp EAI's corporate opportunity, to accomplish a discrete goal of allowing Lynco to reap profits allegedly belonging to EAI, directed at a finite group of individuals, EAI's shareholders. While Plaintiffs allege an unspecified number of mailings to circulate the EDRA, these mailings were "only tangentially related to the underlying fraud." *Stone*, 998 F.2d at 1544. The alleged scheme in no way threatened future criminal activity, since it was finished once EAI ratified the EDRA. All that remained was for Creamer to reap the

---

[2] Even if these allegations do suffice to establish predicate acts of mail fraud committed by Creamer, there is no evidence that Lee or Lynco had any duty to disclose anything to EAI or in any way mislead anyone about Lee's relationship with Creamer.

14

rewards of the scheme through sales of distributorships by Lynco. And even this scheme quickly came to an end when EAI was unable to manufacture the Grass Waffle. EAI stopped doing business as of September of 1994, only eight months after EAI approved the EDRA.

As such, Plaintiffs have not alleged the kind of activity that RICO was enacted to address. Since their claims concerning the EDRA do not meet the pattern requirement, Plaintiffs have failed to set forth a prima facie claim.

## III.   SECURITIES FRAUD CLAIMS.

In addition to asserting securities fraud as a predicate act, Plaintiffs' Third Amended Complaint includes a count for securities fraud on its own. In order to establish primary liability under Section 10(b), Besing must allege and prove: "(1) that the defendant made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that the defendant made the statement or omission with scienter; and (4) that the plaintiff relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation." *Anixter v. Home-Stake Production*, 77 F.3d 1215, 1225 (10th Cir. 1996); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). As set forth above, none of the misrepresentations alleged to have occurred in the sales of EAI stock were made to EAI or to Besing. Thus, neither EAI nor Besing could have relied on these misrepresentations. Moreover, there is no evidence that these alleged misrepresentations caused any damages to either EAI or Besing.

Plaintiffs have failed to establish a prima facie case of securities fraud.

15

**IV.    CLAIMS INVOLVING HEATLY AND VICKERS.**

Plaintiffs ask the Court to reconsider its rulings granting summary judgment to Defendants Ellis Vickers, Bozarth & Vickers and Gene Heatly.  A motion for reconsideration is an opportunity for the court to correct manifest errors of law or fact, to review newly discovered evidence or to review a prior decision when there has been a change in the law.  *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985); *see also* 18 Wright & Miller, Federal Practice and Procedure § 4478, at 790 (2d ed. 1981 & Supp. 1998).  Absent extraordinary circumstances, "revisiting the issues already addressed 'is not the purpose of a motion to reconsider.'"  *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).  Here, Plaintiffs have presented no such circumstances, so any request for reconsideration is denied.

**V.    REMAINING STATE LAW CLAIMS.**

Because the Court has granted summary judgment on all of Plaintiffs' federal claims, the bases for federal court jurisdiction no longer apply.  "When all federal claims have been dismissed, the court may, and usually should decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)).  As the Tenth Circuit explained, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  These compelling reasons included "the nature and extent of pretrial proceedings, judicial economy, convenience and fairness."  *Id.*  While the Court recognizes that discovery has been completed, all of the discovery taken in this action will be useable in any future state court action.  Moreover, none of the parties have submitted any materials in preparation for trial that might not be appropriate for a state court case.  None of the

other factors weigh in either direction, much less provide any compelling reason for the Court to exercise supplemental jurisdiction.

## CONCLUSION

**IT IS THEREFORE ORDERED** that summary judgment is granted to Defendants Creamer, Lee and Lynco on Counts I and II.  **IT IS FURTHER ORDERED** that Counts III, IV and V are dismissed.  This Memorandum Opinion and Order resolves all remaining claims in this case.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiffs:
Joe M. Romero, Jr.

Attorney for Ellis Vickers and Bozarth & Vickers P.C.
Richard E. Olson
Marvin Creamer, *pro se*
Margaret Lee, *pro se*